FLOYD R. GIBSON, Circuit Judge,
with whom McMILLIAN, BEAM, and DIANA E. MURPHY, Circuit Judges, join, dissenting.
I agree with Judge McMillian’s and Judge Beam’s dissents. I write separately to express my dismay at this Court’s unduly narrow view of “limited sovereignty.” The type of “limited sovereignty” allotted by this Court to the tribe is, in fact, no real sovereignty at all.
Whether framed in terms of inherent tribal sovereignty under Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 18, 107 S.Ct. 971, 977-78, 94 L.Ed.2d 10 (1987), or tribal interests under Montana v. United States, 450 U.S. 544, 565-66, 101 S.Ct. 1245, 1258-59, 67 L.Ed.2d 493 (1981), the power to adjudicate everyday disputes occurring within a nation’s own territory is among the most basic and indispensable manifestations of sovereign power. As Chief Justice Marshall observed:
No government ought to be so defective in its organization, as not to contain within itself, the means of securing the execution of its own laws against other dangers than those which occur every day. Courts of justice are the means most usually employed; and it is reasonable to expect, that a government should repose on its own courts, rather than on others.
Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 387-88, 5 L.Ed. 257 (1821). This case does not present an extraordinary occurrence. As the majority opinion notes, this case involves “an ordinary run-of-the-mill automobile accident.” Ante at 940. The majority opinion today denies the tribe the ability to adjudicate the type of basic disputes that occur daily within Indian territory unless these disputes involve tribal members. Such a restriction interferes with the tribe’s ability to manage its affairs by compromising its ability to deal with non-tribe members who happen to wreak havoc on tribal land.
I believe that the analysis and underlying rationale set forth in Montana have no relevance outside the narrow context of a tribe’s ability to regulate fee lands owned by non-Indians. 450 U.S. at 557-67, 101 S.Ct. at 1254-59. As such, I would limit the rule of that case to its facts and rely instead on the broad scope of inherent tribal sovereignty outlined in eases such as Iowa Mutual. 480 U.S. at 18, 107 S.Ct. at 977-78.[1]
Even if I were convinced that the reach of Montana is as broad as the majority of this Court believes it to be, I believe that this case implicates tribal interests and, as such, falls squarely under either of the two Montana exceptions. I believe that this case meets the “consensual relationship” test under the first Montana exception because it arose as a direct result of A-l’s consensual commercial contacts with the tribe. See 450 U.S. at 565-66, 101 S.Ct. at 1258-59. Had A-l not subcontracted with LCM Corporation, a corporation wholly owned by the tribe, to perform construction work on a tribal community building within the boundaries of *945 the reservation, the accident would never have occurred. The majority claims that there is “no proof (as opposed to allegations) ... to support the district court’s finding of fact that A-l was in performance of the contract at the time of the accident.” Ante at 938, note 1. I, however, fail to see any other plausible explanation as to why a gravel truck owned by A-l, a non-Indian-owned company, was on tribal land at the time of the collision. Because I believe that the accident clearly arose as the result of A-l’s consensual relationship with the tribe and its members, I believe that the tribe retains the inherent sovereign power to exercise civil jurisdiction over A-l under the first Montana exception.
I also believe that the tribe retains the inherent power to exercise civil authority over A-l under the second Montana exception because A-l’s conduct on tribal land “threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” 450 U.S. at 566, 101 S.Ct. at 1258-59. The majority dismisses the tribal interests at stake here as a “desire to assert and protect excessively claimed sovereignty.” Ante at 940. As previously observed, however, the ability of a sovereign, even a limited sovereign, to adjudicate the everyday affairs and accidents occurring within its borders and provide a forum for its citizens is one of the most basic and indispensable aspects of sovereignty. Aside from the threat to the tribe’s political integrity, the majority opinion also unfairly discounts the effect of A-l’s conduct on the health and welfare of the tribe. Ante at 940-941. While the immediate victim of the collision, Gisela Fredericks, is not a member of the tribe, she is nonetheless a longtime resident of the reservation whose husband and adult children are enrolled tribal members. To claim that A-l’s conduct on tribal land had no effect on the health or welfare of the tribe is simply unrealistic and not in accordance with the facts.
For the aforementioned reasons, I would affirm the order of the district court.

. Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute. Because the Tribe retains all inherent attributes of sovereignty that have not been divested by the Federal Government, the proper inference from silence is that the sovereign power remains intact.
Citations and quotation omitted.